IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Crim. Action |
| v. ) | No. 05-10016-01-WEB |
| ) | |
| SCOTT HILDRETH, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

**Memorandum and Order**

Defendant Scott Hildreth was charged in a Superseding Indictment with two counts of knowingly possessing a machinegun, in violation of 18 U.S.C. § 922(o). Doc. 11. The matter was tried to a jury, which returned a verdict of guilty as to Count One and not guilty as to Count Two. Doc. 31. The matter is now before the court on defendant's motion for judgment of acquittal. Doc. 34. Although defense counsel has requested oral argument, in view of the applicable legal standards and the evidentiary record the court concludes oral argument would not assist in deciding the issues presented.

I. *Summary of Motion*.

Defendant argues that judgment of acquittal should be granted for two reasons. First, he contends the defense of entrapment was established as a matter of law because the Government failed to prove that he was predisposed to commit the offenses. He argues "in a case such as the instant one where the Government has induced (indeed originated) criminal conduct, and the defense of entrapment is at issue, the prosecution must prove beyond a reasonable doubt that the Defendant was disposed to possess

machineguns *prior* to first being approached by Government agents, *Jacobson v. United States*, 503 U.S. 540 (1992)." Def. Mem. at 2. He believes the evidence "failed to establish that Defendant had the predisposition to possess a machinegun *prior* to being contacted, misled and lured into the situation orchestrated and choreographed by the Government agents." *Id*. "At best," he argues, "the evidence presented by the Government is that Mr. Hildreth had various generalized interests and inclinations regarding firearms, ..." *Id*. at 3. As for his second argument, defendant contends the jury's verdict is inconsistent as a matter of law. He asserts that the defense of entrapment was the only defense submitted to the jury, and that the jury's finding on Count Two necessarily means it found there was entrapment as to that offense. This is inconsistent with the finding of guilt on Count One, he maintains, because the alleged possession of the both machineguns was part of a single, inseparable transaction, with possession occurring at the same time and same place. As such, he argues, the defense of entrapment must be applied to Count One as a matter of law. *Id*. at 3-4 (*citing United States v. Beal*, 961 F.2d 1512 (10th Cir. 1992)).

In its response, the Government argues there was sufficient evidence for the jury to find the defendant was predisposed to commit the offense, and it outlines the evidence at trial pertaining to predisposition. It further argues that the *Beal* case relied upon by defendant is distinguishable because the defendant in the instant case did not rely solely on the issue of entrapment, but instead raised several challenges to the Government's proof.[1] It thus contends the defendant's motion should be denied.

---

[1] In support of its argument, the Government cites certain statements allegedly made by jurors in a post-verdict interview. Doc. 36 at 1-2. For purposes of the instant motion, the court disregards any such statements. *Cf.* Fed.R.Evid. 606(b) (outlining circumstances and methods in which inquiry into verdict may be made). No suggestion has been made that any extraneous prejudicial information or improper outside influence affected the jury's verdict. Accordingly the court concludes that any evidence of juror statements relating to how the verdict was arrived at should be disregarded. As the court notes below,

II. *Discussion.*

For entrapment to exist, two elements must exist: first, government agents must have induced the defendant to commit the offense; and second, the defendant must not have been otherwise predisposed to commit the offense, given the opportunity. *United States v. Nguyen*, 413 F.3d 1170, 1178 (10th Cir. 2005). "Inducement" is governmental conduct which creates a substantial risk that an undisposed person or otherwise law-abiding citizen would commit the offense. *Id*. Under Tenth Circuit law, evidence that a government agent solicited, requested, or approached the defendant to engage in criminal conduct, standing alone, is insufficient to constitute inducement. *Id*. Nor is inducement established from the mere fact that a government agent initiated the contact with the defendant or proposed the crime. *Id*. "Predisposition," by contrast, refers to a defendant's inclination to engage in the crime charged, i.e., whether he was ready and willing to commit the crime. *Id*.

In *United States v. Young*, 954 F.2d 614 (10th Cir. 1992), the court noted:

> The defense of entrapment is generally an issue for the jury and not for the court. *Mathews v. United States*, 485 U.S. 58, 63, 108 S.Ct. 883, 886, 99 L.Ed.2d 54 (1988). If there is any conflicting evidence upon which a jury could find no entrapment, the issue must be determined by the jury. *See United States v. Fadel*, 844 F.2d 1425, 1430 (10th Cir.1988); *Martinez v. United States*, 373 F.2d 810, 812 (10th Cir.1967). Entrapment will be found as a matter of law by a court only if all the elements of entrapment are uncontradicted. *Fadel*, 844 F.2d at 1430; *United States v. Ortiz*, 804 F.2d 1161, 1164 (10th Cir.1986).

*See also United States v. Garcia*, 182 F.3d 1165, 1168 (10th Cir. 1999) (When a jury has found that

---

defendant's argument that the verdict was inconsistent or unsupportable is rejected based upon the fact that a rational jury could find from the evidence presented at trial that the Government met its burden as to the elements of Count One but not Count Two.

3

no entrapment existed, we can alter that finding on legal grounds only 'where the holding should be made without choosing between conflicting witnesses nor judging credibility.... Accordingly, we review only whether sufficient evidence exists to support the jury's verdict.' "). Stated otherwise, "[a] claim of entrapment as a matter of law requires the defendant to show that 'there is undisputed testimony which shows conclusively and unmistakably that an otherwise innocent person was induced to commit the act.'" *United States v. Duran*, 133 F.3d 1324, 1335 (10th Cir. 1998) [citations omitted]. In determining the issue, the court must consider the evidence in the light most favorable to the government, drawing all reasonable inferences in favor of the prosecution. *Id*. "A defendant is not entitled to a claim of entrapment as a matter of law if the government has presented any evidence to contradict the entrapment defense." *Id*. at 1335-36.

In light of these governing legal standards, the court must reject defendant's argument that the evidence established entrapment as a matter of law. A jury could rationally find from the evidence beyond a reasonable doubt that the defendant was not entrapped. Notwithstanding defense counsel's vociferous denunciation of the methods used by the undercover agents in this case, in reality the agents did little more than offer the defendant an opportunity to commit the offense. This was not a case like *Jacobson* where agents engaged in constant solicitations over a period of years, a pattern of conduct that was designed to and arguably could wear down the resistance of an otherwise law-abiding citizen. *Cf. Jacobson*, 503 U.S. at 553 ("The evidence that petitioner was ready and willing to commit the offense came only after the Government had devoted 2½ years to convincing him that he had or should have the right to engage in the very behavior proscribed by law."). Indeed it was undisputed in *Jacobson* that the Government had induced the defendant to commit the crime. *Id*., 503 U.S. at 549, n.2. Here, by contrast, the majority of

4

contacts between the government agents and the defendant consisted of leaving simple messages, and there was little if any evidence that government agents cajoled, hectored or pressured the defendant into engaging in unlawful transactions towards which he was not predisposed. In fact, there was ample evidence at trial of the defendant's predisposition to commit the offense. Predisposition may be shown by evidence of similar prior illegal acts or it may be inferred from a defendant's desire for profit, his eagerness to participate in the transaction, his ready response to the government's inducement offer, or his demonstrated knowledge or experience in the criminal activity. *United States v. Garcia*, 182 F.2d 1165, 1168-69 (10th Cir. 1999). And "although *Jacobson v. United States* ... requires that the defendant's predisposition be viewed at the time the government agent first approached the defendant, *inferences about that predisposition may be drawn from events occurring after the two parties came into contact*." *Garcia*, 182 F.3d at 1169 (emphasis added). As the Government points out in its brief, there was evidence at trial that prior to the alleged offense the defendant purchased and sold a firearm which he thought might be a machinegun at a Tulsa gun show; that he sold a firearm to an undercover officer and eagerly demonstrated to him how to place nickels behind the trigger to make it fire as an automatic; and that he bragged to the officer about how he had fired automatic weapons in the past. Additionally, the defendant's actions in connection with the two transactions involving undercover officer Dee Stahl could reasonably be viewed by a jury as showing defendant's readiness and willlingness to commit the offense. The defendant readily pursued the agent's proposed sale of the machinegun and other firearms, making a prompt bid and attempting to talk her out of her stated plan of taking the guns back to Kansas City so her brother-in-law could examine them. His statements also indicated knowledge concerning the illegality of possessing a machinegun such as the AKM without an appropriate license.

"'[T]he factfinder is traditionally in the better position to evaluate conflicting evidence and determine credibility;' and, therefore, conflicting evidence as to a defendant's predisposition precludes a finding of entrapment as a matter of law." *United States v. Lampley*, 127 F.3d 1231, 1242 (10th Cir. 1997). Given the evidence and the reasonable inferences arising therefrom that support a finding of predisposition, the court cannot conclude as a matter of law that the defendant was entrapped.

Defendant's second argument -- that the jury's verdict was legally inconsistent -- suffers from an erroneous assumption that the only possible ground for the jury's not guilty finding on Count Two was the defense of entrapment. But at trial the defense challenged whether defendant's possession of the machinegun charged in Count Two was done "knowingly" and whether that firearm was in fact a machinegun. Defendant testified that when he "field-tested" the RPB M10 several days before the actual purchase, his examination indicated that the gun would function as a semi-automatic rather than an automatic. The defense also pointed out that the M10 had originally been manufactured as a semi-automatic weapon and that it had no visible external indication of being an automatic. The defense thus denied that the defendant had any knowledge the weapon was a machinegun. Additionally, defendant challenged the Government's evidence that the M10 was in fact a machinegun at the time of the offense. The defense challenged the testimony of one of the agents who said he had fired the M10 before the date of the offense and that it had fired as an automatic. All of this was in contrast to the evidence relating to the Polish AKM that was the subject of Count One. Defendant conceded in his testimony that when he examined the AKM he knew it was an automatic weapon. Clearly, the issue of entrapment was not the only issue the jury decided in this case. *Cf. United States v. Beal*, 961 F.2d 1512, 1513 (10th Cir. 1992) ("The entrapment defense was the only issue submitted to the jury,..."). The elements of knowledge and

whether the firearm was a machinegun were both challenged as to Count Two, but not as to Count One. The *Beal* case is thus clearly distinguishable, despite the fact that Mr. Hildreth possessed both guns at the same time and as part of the same transaction. *Cf. Beal*, 961 F.2d at 1517 ("There is nothing contained in the government's proof which provides a factual distinction between defendant's manifested state of mind during those [two] transactions."). Under the circumstances, defendant's argument that the verdict constitutes an inconsistent application of the entrapment defense amounts to nothing more than speculation. Accordingly, it provides no basis for overturning the jury's decision and entering a judgment of acquittal.[2]

III.  *Conclusion*.

Defendant's Motion for Judgment of Acquittal (Doc. 34) is DENIED.  IT IS SO ORDERED this __24th__ Day of October, 2005, at Wichita, Ks.

s/Wesley E. Brown
Wesley E. Brown
U.S. Senior District Judge

---

[2] Even if the verdict had somehow been inconsistent, it is doubtful the court would have the power to grant defendant's motion. *See United States v. Powell*, 469 U.S. 57, 66 (1984) ("The fact that the inconsistency may be the result of lenity, coupled with the Government's inability to invoke review, suggests that inconsistent verdicts should not be reviewable."). Along these lines, the court notes that the judgment of acquittal granted in *Beal* was not based upon inconsistency in the verdict as such, but rather was based upon a finding that the Government had failed as a matter of law to prove the defendant had not been entrapped. *See Beal*, 961 F.2d at 1516 ("In ruling on the motion for judgment of acquittal, the trial court held, as a matter of law, the defendant was entrapped on both counts.").