IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  05-10016-01-WEB |
| | ) | |
| SCOTT HILDRETH, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**Memorandum and Order**

This matter came before the court on July 16, 2007, for re-sentencing of the defendant following remand from the Tenth Circuit Court of Appeals.  In the course of the July 16 sentencing hearing, the court ruled orally on the defendant's objections to the Presentence Report and his Motion for Divergence or Downward Departure.  This written memorandum will supplement the court's oral rulings.

  I. *Background*.

On October 3, 2005, a jury convicted defendant Scott Hildreth on one count of knowingly possessing a machine gun in violation of 18 U.S.C. § 922(o).  The jury acquitted him on a second count under § 922(o).  A Presentence Report was prepared, which found defendant's total offense level under the U.S. Sentencing Guidelines was 18, and his Criminal History Category was I, resulting in a guideline range of 27-33 months' imprisonment.  The PSR stated that there were no factors warranting a departure from the guidelines.  The defendant filed three objections to the PSR: a challenge to fact that dismissed counts were described in the Report; a challenge to the failure to grant any reduction for acceptance of responsibility; and an argument that a downward departure

was warranted based on factors such as the nature of the offense and the defendant's record of employment and family support.  At the initial sentencing hearing on February 13, 2006, the court found there were no grounds for a traditional departure under the guidelines, but that pursuant to the factors in 18 U.S.C. § 3553(a), and pursuant to the court's understanding of its discretion following *United States v. Booker* to impose a sentence that varied from the advisory guideline range, the court sentenced the defendant to three years' probation, a $6,000 fine, and a $100 special assessment.

The defendant appealed the judgment, after which the United States filed a cross-appeal challenging the sentence.  On May 14, 2007, the Tenth Circuit affirmed the defendant's conviction but vacated the sentence and remanded for resentencing.  The Tenth Circuit determined this court's sentence was unreasonable, finding the court had "essentially ignored the recommendation of the sentencing Guidelines."  The Circuit said this court's "substantial variance" from the guideline range required "compelling reasons that distinguish the particular defendant and conduct at issue from the ordinary defendant contemplated by the advisory Guidelines range."  It noted that several factors relied upon by this court were "already accounted for by the Guidelines," and said this court "did not distinguish Mr. Hildreth from defendants with similar histories convicted of the same crime."  As a result, the Circuit said, this court "impermissibly 'abandon[ed] the tools provided by the advisory Guideline' and 'import[ed] its own philosophy of sentencing.'"[1]  Moreover, the Circuit said,

---

[1]  This court did indeed impose a sentence based upon its own assessment of the § 3553(a) factors.  The court takes this opportunity to explain that it did not do so out of any sense of contempt for the guidelines or the policies underlying them, but rather because it simply disagreed with guidelines' assessment that a sentence of imprisonment was appropriate in this case, and it understood *United States v. Booker* to grant sentencing courts the discretion to evaluate the § 3553(a) factors differently than the Sentencing Commission.  *Cf. United States v. Booker*, 543 U.S. 220, 305-06 (2005)  (Scalia, J. dissenting)  ("[L]ogic compels the conclusion that the sentencing judge, after considering the recited factors (including the Guidelines), has full discretion, as full as what he possessed before the Act was passed, to sentence anywhere within the statutory range. If

the court's "express disregard for one factor, § 3553(a)(6), renders its application of § 3553(a) unreasonable," because although this court recognized the need to avoid unwarranted disparities, "it nonetheless refused to consider § 3553(a)(6), stating that the 'problem with uniform[ity] in sentencing is we don't have uniform defendants.'[2]  The Circuit found that Mr. Hildreth's criminal history and characteristics, as well as the nature of the offense, were already part of the calculation of the sentence under the Guidelines, and "[h]ence, the court's substantial variance threatens to undermine the uniformity in sentencing and does not accord adequate weight to the statutory factors under § 3553(a)."

---

the majority thought otherwise-if it thought the Guidelines not only had to be "considered" ... but had generally to be followed-its opinion would surely say so.").

The court notes the Tenth Circuit is not alone in suggesting that sentencing courts are not at liberty to disagree with the policy decisions embodied in the guidelines.  *See e.g., United States v. Tzep-Mejia*, 461 F.3d 522 (5th Cir. 2006) ("We fully agree with the courts that have held that Booker does not give sentencing courts the discretion to impose a non-Guideline sentence based on the courts' disagreement with Congressional and Sentencing Commission policy.").  This approach would seem to raise serious Sixth Amendment concerns (although not in the instant case), given its similarity to the pre-*Booker* regime under which a sentencing judge was obligated to impose a sentence within the guideline range unless the court found circumstances different than those contemplated by the guidelines.  *See* 18 U.S.C. § 3553(b) (court must sentence within the guidelines unless it finds "circumstances of a kind or to a degree not adequately taken into account by the Sentencing Commission....").  Notwithstanding this concern, the court accepts as the law of the case the Tenth Circuit's determination in this matter and has faithfully attempted to apply it upon resentencing.

[2] In discussing the guidelines at the initial sentencing hearing, the court commented:  "And historically it might interest you to know back before we had guidelines in cases of this kind where the Judge had almost unlimited authority to sentence or put a man on probation and the guidelines came on in their first instance to provide what we call uniform[ity] in sentencing.  The problem with uniform[ity] in sentencing is we don't have uniform defendants.  We don't have uniform prosecutors.  We don't have uniform judges, and we don't have uniform crimes.  Each one is distinct and separate.  But, as far as this judge is concerned, the guidelines have given us an opportunity to try to follow them for the purpose of having uniform[ity] in sentencing and particularly in the punishment of crime."

II. *Re-sentencing*.

After the entry of the Circuit's mandate, this court set the re-sentencing hearing for July 16, 2007.  In anticipation of sentencing, Mr. Hildreth filed a *pro se* motion and memorandum arguing for a variance or departure from the guideline range.

The defendant appeared *pro se* at the July 16 hearing, having terminated his previously-retained counsel.  After conversing with the defendant and informing him of his rights, the court determined that Mr. Hildreth knowingly and voluntarily waived his right to be represented by counsel at sentencing and had voluntarily elected to represent himself.

The defendant raises a number of factors in his brief as justification for a sentence below the advisory guideline range.  He contends the instant offense constituted "aberrant behavior," because it was an unplanned, short-term departure from his usual law-abiding behavior.  He contends he admitted responsibility for his conduct and should receive a reduction on that basis.  He notes the offense was the result of a "reverse sting," in which the machine-gun was sold to him by the government agents at well below its market value.  The defendant argues he has an exceptional employment record, and that he helps to provide jobs for the community.  He says a sentence of imprisonment will cause a substantial loss of support for his family, such that a departure is warranted under Section 5H1.6.  He says he provides child support to his former wife in the amount of $1,600 per month, without which it will be impossible for her to continue to live in her home and take care of their children.  He also says he provides health insurance for the three children through his employment.  Defendant says he is actively involved in civic and/or charitable organizations such that a departure is warranted under Section 5H1.11.

Defendant also contends he has provided substantial assistance to State authorities.  He says

4

he offered to provide information to the federal prosecutor, but the prosecutor did not act on it, so he provided information to local authorities, who took the case and have now turned the matter over to the US Secret Service. The defendant says he has agreed to testify on behalf of the State in that matter, and he argues the court should depart downward based on his assistance. Defendant next argues he is less culpable than the average participant in this type of offense, because he thought his actions were legal at the time of the offense. He also contends a departure is warranted under Section 5K2.11 for committing an offense to avoid a greater harm. He says he committed the offense "to assist the under-cover officer in relieving herself of the firearm" and to provide it to a licensed machine-gun dealer. Defendant argues that he qualifies for a "safety valve" reduction under Section 3553(f). Finally, defendant argues that a consideration of all these factors warrant a downward departure, because his case is outside the "heartland" of cases covered by the guidelines.

The Government filed a response addressing each of the points raised by Mr. Hildreth, and arguing that "none of the reasons provided, either taken individually or in combination, provide justification for a downward departure." Doc. 75 at 1. The Government recommends a mid-range guideline sentence in this case.

The court has reviewed the arguments of the parties. For the reasons stated by the court at the sentencing hearing, none of the factors raised by Mr. Hildreth warrant a departure from the guideline range. With regard to aberrant behavior, the guidelines provide that such a departure is not appropriate where the defendant has a prior felony conviction, as does Mr. Hildreth. *See* USSG 5K2.20. Although the Presentence Report indicates that the defendant's 1988 conviction was expunged, the court finds it appropriate to consider this conviction in evaluating the claim that the instant offense was a marked deviation from an otherwise law-abiding life. The court also agrees

5

with the Government that the instant offense involved significant planning, as the defendant had ample time to decide if he wanted to go ahead and purchase the machine gun.  As for acceptance of responsibility, the court finds, as it did at the initial sentencing, that the defendant is not entitled to any reduction for acceptance of responsibility.  Although an entrapment defense does not necessarily preclude a defendant from obtaining an acceptance reduction, the defendant has not clearly demonstrated acceptance of responsibility for this offense.  In addition to the fact that he went to trial and required the Government to prove all of the factual elements of the offense (including the element of possession), his brief still asserts that he did not know his conduct was illegal, and he further claims he possessed the gun merely to assist the "widow" [agent Stahl] in getting rid of the gun.  Neither of those claims is credible under the evidence presented at trial.

Defendant argues  the circumstances under which the firearms were sold by the Government warrants a reduced sentence, pointing out that under the guidelines for drug offenses, a "reverse sting" involving a sale at substantially below market value is recognized as a possible ground for departure.  *See* USSG § 2D1.1, comment (n. 14).  Although this was a reverse sting and the undercover agent sold the machine gun at well below its market value, the court is not persuaded that this fact warrants a departure or variance.  The evidence showed that Mr. Hildreth had some prior involvement with automatic weapons, and he was ready and willing to commit the offense.  As the court recalls, there was evidence that the defendant offered a price for the firearms, and he made no effort to avoid purchasing the machine gun.  He also stated to the undercover agent that he had previously purchased firearms for relatively large sums of money.  The court agrees with the Government that the defendant was not unfairly tricked into committing the crime.  The Government merely provided him with the opportunity, and he chose to do it.  In the court's view, the "reverse

6

sting" nature of the offense does not warrant a departure or variance.

Although the defendant has a very good employment record, the Tenth Circuit found this factor did not warrant the variance previously granted.  It also said that none of the factors cited by this court distinguished this case from the ordinary case.  In view of the Tenth Circuit's ruling, the court cannot find this factor warrants a variance from the guidelines.  Nor do the defendant's other civic activities warrant any variance from the guideline range.  For the same reasons, the court finds the defendant's support of his family – and the loss of support resulting from his imprisonment – do not warrant a departure or variance.

The defendant's assistance to State authorities on another criminal matter does not warrant a reduction.  Even if the court could grant this type of departure without a motion from the Government, the court does not believe the assistance claimed here warrants any reduction.  There is no evidence of any successful prosecution in the other case, and the mere fact the defendant has provided information and is willing to help out does not mean his assistance is "substantial" insofar as the Federal Government is concerned.  The court also rejects the defendant's argument that he is less culpable than the average defendant, which is based on his claim that he did not realize his conduct was illegal.  The evidence at trial showed the defendant was well aware that it was unlawful to possess the machine gun.

The defendant's argument about the "safety valve" is also unavailing.  As the Government points out, the safety valve only applies in drug offenses, and it does not apply to a defendant who possessed a firearm.  *See* USSG § 5C1.2.  Similarly, no reduction is warranted under the "lesser harm" provision, as the defendant has not shown that this offense was committed to avoid a perceived greater harm.  *Cf.*  USSG 5K2.11

*Statutory factors*.   Under Section 3553, the court is required to impose a sentence sufficient, but not greater than necessary, to comply with the following purposes:   The need for the sentence imposed– (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;  (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant;  and  (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

In doing so, the court must consider the following factors: (1) the nature and circumstances of the offense and the history and characteristics of the defendant;  (2) [the purposes of sentencing set forth above];  (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for the offense under the applicable sentencing guidelines; (5) any pertinent policy statement issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.

When the defendant came before the court for sentencing the first time, the court looked at these factors and found a sentence of probation rather than imprisonment was sufficient but not greater than necessary to comply with the purposes of sentencing.  The Tenth Circuit has now said the factors cited by the court did not distinguish the defendant's case from the ordinary case and did not justify the sentence of probation imposed by the court.  This puts the court in a quandary, because it believed then – and believes now – that the defendant's background shows he could successfully complete probation.  The court also believed the Supreme Court's *Booker* ruling gave the court the latitude to impose such a sentence, but the Tenth Circuit has ruled otherwise, and the

8

court accepts that ruling and has done its best to apply it to the case at hand.

The court cannot find any unusual or exceptional factors beyond those on which it relied in the first instance. After reconsidering the § 3553(a) factors, the court finds that a sentence within the guideline range will reflect the serious nature of the offense, it will afford adequate deterrence to criminal behavior, and it will protect the public from further crimes of the defendant. Pursuant to Section 3553 and the ruling of the Tenth Circuit – which is the law of the case – the court finds that a sentence of 27 months' imprisonment, together with a 2-year term of supervised release, $6,000 fine[3], and $100 special assessment, is an appropriate sentence in this case.

III. *Conclusion*.

The defendant's objections to the Presentence Report and his Motion for Departure or Divergence (Docs. 73, 74) are DENIED. The Probation Officer in charge of this case shall see that a copy of this order is appended to any copy of the Presentence Report made available to the Bureau of Prisons. IT IS SO ORDERED this 24th Day of July, 2007, at Wichita, Ks.

s/Wesley E. Brown
Wesley E. Brown
U.S. Senior District Judge

---

[3] It was disclosed on the record at the sentencing hearing that the defendant has already paid the $6,000 fine and the special assessment.

9